UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALEX DANIEL TARABOCHIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>F.B.I. Special Agent MICKEY ADKINS, et al.,<br><br>Defendants. | CASE NO. C10-5197BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants Mike Cenci, Dan Chadwick, Brett Hopkins and Brad Rhoden's ("Defendants") motion for summary judgment (Dkt. 50). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On June 1, 2010, Plaintiffs Alex Daniel Tarabochia, Bryan Anthony Tarabochia, Joseph Burton Tarabochia, and Matthew Alexander Tarabochia filed a complaint against

Defendants Mickey Adkins[1], Mike Cenci, Dan Chadwick, Brett Hopkins and Brad Rhoden. Dkt. 7 ("Complaint"). Plaintiffs allege violations of their rights under the Fourth, Sixth, and Fourteenth Amendments to the Constitution. *Id*.

On May 20, 2011, Defendants Mike Cenci, Dan Chadwick, Brett Hopkins and Brad Rhoden (hereafter "Defendants") filed a motion for summary judgment. Dkt. 50. On July 14, 2011, Plaintiffs responded. Dkt. 66. On July 19, 2011, Defendants replied. Dkt. 69.

## II. FACTUAL BACKGROUND

Joseph Tarabochia ("Joseph") claims that he has been a commercial fisherman his entire life and that he has a long history of interactions with Washington State Fish and Wildlife ("WSFW") officers. Dkt. 67, Declaration of Joseph Tarabochia ("Tarabochia Decl.") at 1. Joseph asserts that approximately 11 years ago, Defendant WSFW Officer Cenci "began a personal vendetta against [Joseph] and his family." *Id*. at 2. Joseph recounts a number of incidents to support his accusation, *Id*. at 2-6, and alleges that these previous incidents directly led to the encounter at issue, which is described below.

On March 23, 2007, Defendants were working as WSFW officers near Cathlamet and Skamokawa, Washington along the lower Columbia River. Dkt. 52, Declaration of Dan Chadwick ("Chadwick Decl."), ¶ 6. Defendants were conducting field inspections, checking commercial gillnet fishermen who were transporting fish, to ensure they had properly filled out transportation or wholesale fish tickets and to ensure that they were not in possession of any prohibited species such as wild Chinook salmon, steelhead or undersize/oversize sturgeon. *Id*. Officer Cenci, Deputy Chief of Enforcement Operations, claims that the field inspection program is an important part of the WSFW's

---

[1] On October 6, 2010, Plaintiffs informed the Court that they did not serve Agent Adkins and that they would not be pursing their claims against Agent Adkins. Dkt. 17 at 1-2.

ORDER - 2

efforts to maintain the fisheries for the use and enjoyment of all the citizens in the state. Dkt. 51, Declaration of Mike Cenci ("Cenci Decl."), ¶ 4.

Between 6:00 a.m. and 7:45 a.m., Officer Cenci was located on a hill overlooking the Skamokawa Bridge. *Id.* ¶ 9. From there he observed three fishing vessels unloading fish in an area that is commonly known for that activity as well as for fish selling and purchasing. *Id.* Officer Cenci recognized plaintiff Matthew Tarabochia ("Matthew") when he backed up a pickup to a fishing vessel. *Id.* ¶ 10. Officer Cenci observed some activity with a fish tote in the back of the pickup. *Id.*

At about 7:20 a.m., Officer Cenci called Officer Chadwick who was located a short distance away and told him that salmon had been loaded into a black 2004 Chevy pickup. *Id.* ¶ 12. Officer Chadwick parked his vehicle a short distance away and waited for the 2004 Chevy pickup to drive by. Chadwick Decl., ¶ 8. At 7:48 a.m., the pickup passed Officer Chadwick, who pulled out from his parking spot and proceeded to follow the truck. *Id.* ¶ 9. Officer Chadwick eventually pulled up behind the pickup, activating his emergency lights, which included red and blue lights along with corner strobe lights and wigwag headlights. *Id.* The pickup did not stop. *Id.*

Officer Cenci joined the pursuit of the pickup. He drove his vehicle around Officer Chadwick's vehicle and the pickup. Cenci Decl., ¶ 14. The officers were eventually able to slow and stop the pickup. *Id.*

The officers approached the pickup and ordered Plaintiffs to exit the vehicle. *Id.* ¶¶ 14, 15. Officer Cenci claims that he repeatedly gave the driver of the pickup, Matthew, loud, clear commands to unlock the pickup and exit the vehicle. *Id.* ¶ 15. Despite those requests, Matthew refused to unlock or exit the pickup. *Id.*

After a few minutes, Wahkiakum County Sheriff deputies arrived on the scene as well as WSFW Officers Hopkins and Rhoden. *Id.* ¶ 16. Matthew eventually opened his door and Officer Cenci took him into custody. *Id.* The passenger in the front seat,

ORDER - 3

Joseph, opened his door and Officer Rhoden took him into custody. Dkt. 53, Declaration Brad Rhoden, ¶ 10. Both Matthew and Joseph were transported to the Wahkiakum County Jail and charged with avoiding a field inspection, obstruction of justice and resisting arrest. *Id*. ¶ 13. The charges were dismissed by the Superior Court of the State of Washington because the stop violated certain state statues governing the authority of WSFW officers. Dkt. 54 at 4-9.

### III. DISCUSSION

Defendants have moved for summary judgment based on the doctrine of qualified immunity. Plaintiffs respond that the "actions of the defendants in this situation, rather than being an innocent mistake as to Washington law, was a premeditated, preplanned, and malicious harassment by the defendants." Dkt. 66 at 1. The Court finds that (1) Defendants are entitled to qualified immunity on Plaintiffs' Fourth Amendment claim; (2) Defendants have failed to address Plaintiffs' Fourteenth Amendment claim; and (3) Defendants' are entitled to summary judgment on Plaintiffs' Sixth Amendment claim.

**A.    Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, if a constitutional violation occurred, government officials are entitled to qualified immunity if they acted reasonably under the circumstances. *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v. Callahan*, 129 S. Ct. 808,

815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to a plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. *Pearson*, 129 S. Ct. at 818.

**C.   Fourth Amendment**

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.

In this case, Plaintiffs claim that Defendants violated their right to be free from unreasonable searches and seizures. Dkt. 7 at 7-8. Defendants contend that they are entitled to qualified immunity. Dkt. 50 at 9-19. The Court finds that the most suitable manner to address the qualified immunity inquiry is to consider the second step of the analysis, whether the constitutional right was clearly established. This inquiry turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Wilson v. Layne*, 526 U.S. 603, 614 (1999) (internal quotation marks omitted); *see Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful" (internal quotation marks omitted)). Defendants contend that they "are entitled to qualified immunity because their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." Dkt. 50 at 18. The Court agrees that the law regarding warrantless stops by WSFW officers was not clearly established.

In support of their motion, Defendants have submitted a recent opinion by the Supreme Court of California, *People v. Maikhio*, 253 P.3d 247 (2011). The court stated the facts as follows:

> In the present case, a fish and game warden (hereafter game warden), surveilling a public fishing pier from a distance with a spotting telescope, observed defendant Bouhn Maikhio fishing with a handline from the pier and catching either a lobster or fish that defendant placed in a small black bag by his side. Although from his position the game warden could not identify the item defendant had caught and placed in the bag, the warden was aware that, although it was unlawful to do so, such handlines were often utilized in that location to catch spiny lobsters, which were out of season at that time. After the game warden saw defendant leave the pier with the black bag, enter a car in the pier parking lot, and drive away, the warden stopped defendant's car a few blocks from the pier, introduced himself as a game warden, and asked defendant if he had any fish or lobsters in his car. When defendant denied having any, the game warden looked in the car, saw the black bag on the floor of the rear passenger area, opened the bag and discovered a spiny lobster. Upon questioning, defendant admitted taking the lobster and said he had been "stupid" to do so. The game warden issued a citation to defendant and thereafter returned the lobster to the ocean.

*Id*. at 249-250. The defendant moved to suppress the evidence obtained by the game warden because the warden had engaged in an unconstitutional search and seizure. *Id*. at 250. The court "conclude[d] that the vehicle stop was constitutionally permissible." *Id*. at 257. With regard to the state of the law on this issue, the court stated that

> [t]o date, the United States Supreme Court has not directly addressed the question of the constitutional validity of a brief stop of an angler or hunter by a game warden to demand the display of any fish or game in the angler's or hunter's possession, either when the angler or hunter is on foot or is in a vehicle.

*Id*. Although the California Supreme Court's holding is not binding on this Court, it is at least persuasive authority as to the state of the federal law on this Fourth Amendment issue.

With regard to cases that are binding on this Court, the Court is unaware of, and neither party has cited, a case that established the law on this Fourth Amendment issue. Plaintiffs argue that they have a "clear, historic and unequivocal right to be left alone absent a showing of reasonable grounds for their arrest." Dkt. 66 at 12. While the Fourth Amendment protects citizens against unreasonable searches and seizures, there is an absence of law that would have informed Officer Cenci or Officer Chadwick that they violated a clearly established constitutional right by performing the vehicle stop and field inspection. Therefore, Defendants are entitled to qualified immunity and the Court dismisses Plaintiffs' Fourth Amendment claim against Defendants.

### D. Sixth Amendment

Plaintiffs claim that Defendants' conduct has deprived them of their Sixth Amendment right to be informed of the accusations against them. Dkt. 7 at 8-9. Defendants argue that Plaintiffs "make no effort to specify how the particular right was alleged to have been violated . . . ." Dkt. 50 at 19. The Court agrees. Therefore, the Court grants Defendants' motion for summary judgment on Plaintiffs' Sixth Amendment claim because Plaintiffs have failed to submit admissible facts in support of this claim.

### E. Fourteenth Amendment

Plaintiffs claim that Defendants' conduct has deprived them of their Fourteenth Amendment due process and equal protection rights. Dkt. 7 at 8-9. Defendants contend that these "claims must fail as a matter of law because the question of whether an officer's seizure of an individual is constitutional is analyzed exclusively under the protections afforded to the plaintiffs under the Fourth Amendment." Dkt. 50 at 20. Plaintiffs, however, have alleged other conduct by Defendants unrelated to the stop on March 23, 2007. *See* Complaint, ¶ 7; *see also*, Tarabochia Decl. at 2-7. Based on these allegations, the Court finds that Plaintiffs have stated a claim for relief under the due

process clause of the Fourteenth Amendment and that Defendants have failed to address this claim.

Alleged abuses of power by executive officials may support a cognizable claim as a violation of substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). A Fourteenth Amendment claim of this type is cognizable if the alleged abuse of power "shocks the conscience" and "violates the decencies of civilized conduct." *Id*. at 846 (internal quotations omitted). Government conduct is actionable if the conduct is "intended to injure [the plaintiff] in some way unjustifiable by any government interest . . . ." *Id*. at 849.

In this case, the *pro se* Plaintiffs' complaint should be construed liberally, affording Plaintiffs the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Plaintiffs' complaint includes allegations of government official conduct that may have been intended to injure Plaintiffs in some way unjustifiable by any government interest. This claim appears to be supported by the facts alleged in the declaration on file. Defendants have failed to address this claim. Therefore, the Court denies Defendants' motion for summary judgment on Plaintiffs' Fourteenth Amendment claim.

**IV. ORDER**

Therefore, it is hereby

**ORDERED** that Defendants' motion for summary judgment (Dkt. 50) is **GRANTED in part** and **DENIED in part** and Plaintiffs' Fourth and Sixth Amendment claims against Defendants are **DISMISSED**.

DATED this 9th day of August, 2011.

BENJAMIN H. SETTLE
United States District Judge