1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALEX DANIEL TARABOCHIA, et al.,

     Plaintiffs,

     v.

F.B.I. Special Agent MICKEY ADKINS, et al.,

     Defendants.

CASE NO. C10-5197BHS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

17
18
19
20

    This matter comes before the Court on Defendants Mike Cenci, Dan Chadwick, Brett Hopkins and Brad Rhoden's ("Defendants") motion for summary judgment (Dkt. 84). The Court has considered the pleading filed in support of the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

21

## I. PROCEDURAL HISTORY

22
23
24
25

    On June 1, 2010, Plaintiffs Alex Daniel Tarabochia, Bryan Anthony Tarabochia, Joseph Burton Tarabochia, and Matthew Alexander Tarabochia filed a complaint against Defendants Mickey Adkins[1], Mike Cenci, Dan Chadwick, Brett Hopkins and Brad Rhoden.

26
27
28

---

[1] On October 6, 2010, Plaintiffs informed the Court that they did not serve Agent Adkins and that they would not be pursing their claims against Agent Adkins. Dkt. 17 at 1-2.

1   Dkt. 7 ("Complaint").  Plaintiffs allege violations of their rights under the Fourth, Sixth, and

2   Fourteenth Amendments to the Constitution.  *Id*.

3       On May 20, 2011, Defendants Mike Cenci, Dan Chadwick, Brett Hopkins and Brad

4   Rhoden (hereafter "Defendants") filed a motion for summary judgment.  Dkt. 50.   On

5   August 9, 2011, the Court granted in part and denied in part the motion.  Dkt. 77.  On

6   August 15, 2011, Defendants filed a motion for summary judgment on Plaintiff's only

7   remaining claim.  Dkt. 84.  Plaintiffs did not respond.

8                              **II. FACTUAL BACKGROUND**

9       Joseph Tarabochia ("Joseph") claims that he has been a commercial fisherman his

10  entire life and that he has a long history of interactions with Washington State Fish and

11  Wildlife ("WSFW") officers.  Dkt. 67, Declaration of Joseph Tarabochia ("Tarabochia

12  Decl.") at 1.  Joseph asserts that approximately 11 years ago, Defendant WSFW Officer

13  Cenci "began a personal vendetta against [Joseph] and his family."  *Id*. at 2.  Joseph recounts

14  a number of incidents to support his accusation, *Id*. at 2-6, and alleges that these previous

15  incidents directly led to the encounter at issue, which is described below.

16

17      On March 23, 2007, Defendants were working as WSFW officers near Cathlamet

18  and Skamokawa, Washington along the lower Columbia River.  Dkt. 52, Declaration of Dan

19  Chadwick ("Chadwick Decl."), ¶ 6.  Defendants were conducting field inspections,

20  checking commercial gillnet fishermen who were transporting fish, to ensure they had

21  properly filled out transportation or wholesale fish tickets and to ensure that they were not

22  in possession of any prohibited species such as wild Chinook salmon, steelhead or

23  undersize/oversize sturgeon.  *Id*.  Officer Cenci, Deputy Chief of Enforcement Operations,

24  claims that the field inspection program is an important part of the WSFW's efforts to

25  maintain the fisheries for the use and enjoyment of all the citizens in the state.  Dkt. 51,

26  Declaration of Mike Cenci ("Cenci Decl."), ¶ 4.

27

28

ORDER - 2

Between 6:00 a.m. and 7:45 a.m., Officer Cenci was located on a hill overlooking the Skamokawa Bridge.  *Id*. ¶ 9.  From there he observed three fishing vessels unloading fish in an area that is commonly known for that activity as well as for fish selling and purchasing.  *Id*.  Officer Cenci recognized plaintiff Matthew Tarabochia ("Matthew") when he backed up a pickup to a fishing vessel.  *Id*. ¶ 10.  Officer Cenci observed some activity with a fish tote in the back of the pickup.  *Id*.

At about 7:20 a.m., Officer Cenci called Officer Chadwick who was located a short distance away and told him that salmon had been loaded into a black 2004 Chevy pickup.  *Id*. ¶ 12.  Officer Chadwick parked his vehicle a short distance away and waited for the 2004 Chevy pickup to drive by.  Chadwick Decl., ¶ 8.  At 7:48 a.m., the pickup passed Officer Chadwick, who pulled out from his parking spot and proceeded to follow the truck.  *Id*. ¶ 9. Officer Chadwick eventually pulled up behind the pickup, activating his emergency lights, which included red and blue lights along with corner strobe lights and wigwag headlights. *Id*.  The pickup did not stop.  *Id*.

Officer Cenci joined the pursuit of the pickup.  He drove his vehicle around Officer Chadwick's vehicle and the pickup.  Cenci Decl., ¶ 14.  The officers were eventually able to slow and stop the pickup.  *Id*.

The officers approached the pickup and ordered Plaintiffs to exit the vehicle.  *Id*.  ¶¶ 14, 15.  Officer Cenci claims that he repeatedly gave the driver of the pickup, Matthew, loud, clear commands to unlock the pickup and exit the vehicle.  *Id*.  ¶ 15. Despite those requests, Matthew refused to unlock or exit the pickup.  *Id*.

After a few minutes, Wahkiakum County Sheriff deputies arrived on the scene as well as WSFW Officers Hopkins and Rhoden.  *Id*. ¶ 16.  Matthew eventually opened his door and Officer Cenci took him into custody.  *Id*.  The passenger in the front seat, Joseph, opened his door and Officer Rhoden took him into custody.  Dkt. 53, Declaration Brad Rhoden, ¶ 10.  Both Matthew and Joseph were transported to the Wahkiakum County Jail

1 and charged with avoiding a field inspection, obstruction of justice and resisting arrest. *Id.*

2 ¶ 13. The charges were dismissed by the Superior Court of the State of Washington

3 because the stop violated certain state statues governing the authority of WSFW officers.

4 Dkt. 54 at 4-9.

### III. DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party is entitled to judgment as a matter of law when the nonmoving party fails

to make a sufficient showing on an essential element of a claim in the case on which the

nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). There is no genuine issue of fact for trial where the record, taken as a whole, could

not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus.*

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present

specific, significant probative evidence, not simply "some metaphysical doubt"). *See also*

Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is

sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to

resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

Cir. 1987).

The determination of the existence of a material fact is often a close question. The

Court must consider the substantive evidentiary burden that the nonmoving party must meet

at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at

254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of

controversy in favor of the nonmoving party only when the facts specifically attested by

ORDER - 4

1   that party contradict facts specifically attested by the moving party.  The nonmoving party

2   may not merely state that it will discredit the moving party's evidence at trial, in the hopes

3   that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d

4   at 630 (relying on *Anderson,* 477 U.S. at 255).  Conclusory, nonspecific statements in

5   affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l*

6   *Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

7   **B.     Fourteenth Amendment**

8           Alleged abuses of power by executive officials may support a cognizable claim as a

9   violation of substantive due process.  *See County of Sacramento v. Lewis*, 523 U.S. 833,

10  846 (1998).  A Fourteenth Amendment claim of this type is cognizable if the alleged abuse

11  of power "shocks the conscience" and "violates the decencies of civilized conduct."  *Id*. at

12  846 (internal quotations omitted).  Government conduct is actionable if the conduct is

13  "intended to injure [the plaintiff] in some way unjustifiable by any government interest . . .

14  ." *Id*. at 849.

15

16  **C.     42 U.S.C. § 1983**

17          Plaintiffs bring their constitutional claim against Defendants under 42 U.S.C. §

18  1983, which provides, in part, as follows:

19          Every person who, under color of any statute, ordinance, regulation, custom,
            or usage, of any State or Territory or the District of Columbia, subjects, or
20          causes to be subjected, any citizen of the United States or other person
            within the jurisdiction thereof to the deprivation of any rights, privileges, or
21          immunities secured by the Constitution and laws, shall be liable to the party
            injured in an action at law, suit in equity, or other proper proceeding for
22          redress . . . .

23  42 U.S.C. § 1983.

24          In deciding claims under Section 1983, federal courts borrow state statutes of

25  limitations on a statewide basis.  *City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S.

26  113, 124 (2005) ("42 U.S.C. § 1988 is 'a directive to select, in each State, the one most

27  appropriate statute of limitations for all § 1983 claims.'").  The Washington statute

28

1    applicable to Section 1983 claims provides for a three-year statute of limitations. *Joshua*

2    *v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989) ("In 'considering § 1983 claims [we] should

3    borrow the general or residual statute for personal injury actions.' In Washington, that

4    would be three years.").

5    **D.    Defendants' Motion**

6           Defendants argue that Plaintiffs' Fourteenth Amendment claim is barred by the

7    applicable statute of limitations because the allegations supporting the claim occurred

8    more than three years before Plaintiffs filed their complaint.  Dkt. 84 at 3-4.  Plaintiffs

9    initiated this action on March 22, 2010.  Dkt. 1.  Plaintiffs' allegations supporting their

10   claim that Defendants' actions were abuses of power by executive officials all occurred

11   prior to March 22, 2007.  *See* Dkt. 7; *see also* Dkt. 67, Declaration of Joseph Tarabochia.

12   Therefore, the Court agrees with Defendants that Plaintiffs' claim is time-barred and grants

13   Defendants' motion.

14                                    **IV. ORDER**

15          Therefore, it is hereby

16          **ORDERED** that Defendants' motion for summary judgment (Dkt. 84) is

17   **GRANTED** and Plaintiffs' Fourteenth Amendment claims against Defendants is

18   **DISMISSED**.  The Clerk is directed to enter judgment for Defendants.

19          DATED this 27th day of September, 2011.

20

21

22

23                                    BENJAMIN H. SETTLE
                                      United States District Judge
24

25

26

27

28

ORDER - 6